PLACE *v.* STATE.

## Opinion delivered December 23, 1905

1. EQUITY—FALSIFICATION OF ACCOUNTS—MULTIFARIOUSNESS.—A complaint against a county clerk and the sureties on the several bonds executed by him which alleges that he presented and procured the allowance of improper and fictitious accounts, and fraudulently issued warrants to himself on fictitious allowances and upon judgments of allowances which he had fraudulently raised in amount, and that the accounts kept by him are so complicated that it is impossible to point out and designate the various items or ascertain the liability of the respective bondsmen without the aid of equity, states a case for equitable relief, and justifies a joinder of the several sureties in one suit. (Page 331.)

2. FRAUDULENT COUNTY WARRANTS—SURRENDER—FORM OF JUDGMENT.—In an action by a county to falsify the accounts of a county clerk and to recover from him and the sureties on his official bonds the amounts for which county warrants have been fraudulently issued to him in excess of the proper amount due, where the proof failed to show that the warrants so fraudulently issued had ever been paid by the county or by whom they were held, it was not error to decree a judgment in favor of the county for such excess, and that the decree might be satisfied in part or in whole by surrendering the warrants fraudulently issued or by payment in valid warrants of the county or in lawful money. (Page 332.)

Appeal from Garland Chancery Court; LELAND LEATHERMAN, Chancellor; affirmed.

### STATEMENT BY THE COURT.

Appellant Frank C. Place was duly elected to and held the office of clerk of Garland County for three successive terms from 1894 to 1900, and gave separate bonds, as provided by law, for the faithful performance of his duties during the several terms.

The prosecuting attorney on April 17, 1901, brought this suit in equity in the name of the State of Arkansas for the use of Garland County against appellants, Place and the three sets of sureties on his said several bonds, to recover amounts alleged to be due the county on account of fraudulent allowances and issuance of scrip to Place.

The complaint, after making certain specific charges of fraudulent procurement of allowances and issuance of scrip whereby Place is indebted to the county on a fair settlement in the certain large sums named, contains the following allegations, viz.:

"But the said plaintiff says that the defendant is indebted to the said Garland County in divers other large sums of money, for which he has taken credit in his accounts, but for which he was not entitled under the law. And the said plaintiff, complaining of the defendant, says that he has caused certain allowances to be made him, in violation of the law, and that said defendant, after allowances were made by the county of Garland, raised or increased the amounts of such allowances upon the records of the county, and has thus made the records appear as showing allowances to him which were never in fact made by the courts, but the defendant nevertheless wrongfully and fraudulently issued to himself scrip thereon, and said warrants have been paid by Garland County. * * * The plaintiff further states that there are divers other sums for which the defendant takes credit, which are for bills rendered against the county for which the county is not and never was liable, and are fraudulent and void, but that the said accounts of the said Frank C. Place are so involved and complicated that the plaintiff is unable to point out and designate all of said items. That the said Frank C. Place has been clerk of Garland County for several terms, and has different bondsmen for each term, and that the liability of the respective bondsmen can only be ascertained by the stating of the account by a master, to be appointed by the court."

The prayer of the complaint is that a master be appointed by the court to state an account between the defendant Place and Garland County, that "all of said items for which the said defendant takes credit be carefully examined into, and that he be charged with all fraudulent allowances made to himself, and for all fraudulent issues of scrip made to others and for himself, and that judgment be given in favor of plaintiff for the sum due, and for other relief."

The defendants demurred to the complaint on the ground (1) that the court had no jurisdiction of the subject-matter of the suit, (2) that the facts set forth do not constitute a cause of action, and (3) that there is a defect and misjoinder of parties defendant, because the plaintiff has no right to join the several sets of bondsmen in one suit.

The demurrer was overruled, and the defendants answered, denying all the material allegations of the complaint as to fraud

and indebtedness to the. county in any sum. It is specifically denied in the answer that any of the alleged fraudulent warrants have been paid by the county.

The court appointed a master, with directions to state an account between defendant Place and the county, such account to show all allowances to him and dates thereof, for what sums, etc., the amounts and numbers of warrants issued to him and various other matters specifically designated in the order of reference tending to establish the allegations of the complaint.

The master reported, and upon exception thereto the court heard the cause upon the report and depositions of witnesses and documentary evidence, and rendered a decree in favor of the plaintiff against Frank C. Place and S. A. Sammons, E. T. Housley and W. F. Housley, the sureties on his bond for term of office ending October 31, 1898, the sum of $1.751.24 on account for warrants fraudulently drawn by Place in his own favor; and against Place and W. D. McDowell, W. W. Waters, C. G. Bryant, R. H. Rouse, D. L. Moore, B. H. Randolph, Zack Phillips and W. A. Moore the sureties on his bond for the term ending October 31, 1900, the sum of $2,236.80 on account of warrants fraudulently drawn by Place in his own favor.

The court specifically found that the proof failed to show that the warrants so fraudulently drawn by Place had ever been paid by the county, and it was further decreed that "this judgment and decree may be satisfied in part or in whole by the turning over and surrendering to the plaintiff any of the warrants designated as fraudulently drawn  *  *  *  or by payment in valid warrants of Garland County, or in lawful money."

Defendants appealed to this court.

*R. G. Davies* and *Wood & Henderson,* for appellants.

1. The demurrer should have been sustained for that the complaint failed to state a case for equitable jurisdiction, and because of misjoinder of parties defendant. 49 Ark. 311.

2. The decree was erroneous because the evidence failed to show any payment or redemption of the warrants. 37 Ark. 532. Principal and sureties on an official bond are liable for actual damages only, which damages must be proved. Throop, Public Officers, § 293; 15 Enc. Pl. & Pr. 120, 121, and notes  Under

the findings of the chancellor, the warrants are void, and created no liability against the county. That they were outstanding did not damage the county. 25 Ark. 261.

*W. H. Martin,* for appellee.

McCULLOCH, J., (after stating the facts.)   1.   Appellants contend that their demurrer should have been sustained because a cause of action is not stated calling for equitable interference, and that the several sets of bondsmen can not be joined in one action. They rely upon the case of *State* v. *Turner,* 49 Ark. 311, as sustaining their contention. That case was a suit against a county collector and six sets of sureties on his several official bonds to set aside erroneous settlements with the county court. A demurrer to the complaint was sustained, and this court affirmed the decision of the circuit court. The decision is placed upon the ground that the allegations of the complaint lack precision, and do not point out specifically the errors and fraudulent credits complained of; and that no cause is stated for uniting the sureties on the several bonds in one suit. It is pointed out in the opinion that the collector is not required by law to keep books and accounts from which the condition of his account with the county can be ascertained, but that his account is kept by the clerk, and in this way the court distinguishes the case of *State* v. *Churchill,* 48 Ark. 426, where, upon similar allegations, a suit of this kind was maintained against the State Treasurer and the separate sets of sureties on his several official bonds.

. We think that the facts of this case bring it within the doctrine established in the Churchill case, and that the suit properly lies in equity, and that all the sureties may be joined in one suit. In this way only can the ends of justice be met.

Mr. Justice SOMERVILLE, in delivering the opinion of the court in *Lott* v. *Mobile County,* 79 Ala. 69, said: "The question of multifariousness is often one of policy and convenience, and therefore rests largely within the discretion of the court. It is sufficient to sustain a bill against such a charge that each defendant has an interest in some of one matter common to all the parties. The objection is discouraged when sustaining it might lead to inconvenience or defeat the ends of justice. Filing separate bills against each set of sureties in this case, it seems to us, might lead

to great inconvenience, in view of the peculiar interests each surety has in the taking of the account, and the correction of alleged errors of credits and payments."

The county clerk is the custodian of the books of the county and the keeper of the various accounts of the county with himself, as well as with all others who have dealings with the county. It is here alleged that the clerk presented and procured the allowance of improper and fictitious accounts, fraudulently issued scrip to himself upon fictitious allowances and upon judgments or allowances which he had fraudulently raised in amount, and that the accounts kept by him are so complicated that it is impossible to point out and designate the various items, or ascertain the liability of the respective bondsmen without the aid of a court of equity and the reference to a master.

We think these allegations are sufficient to give a court of equity jurisdiction, and justify a joinder of the several sureties in one suit.

2.   It is next contended that the decree was erroneous because the proof failed to show that the fraudulent warrants have ever been paid by the county.

It is too plain, upon principle, to need citation of authority in support of it that sureties on official bonds, as well as upon other undertakings, are liable thereon for only such breaches as result in injury to the obligee, and only to the extent of such injury.   Appellants say that, notwithstanding the misconduct of the principal, which amounted to a breach of his bond, the county suffered no injury because the warrants have not been paid, and that, being void because of the fraud, the county is in no wise liable for payment thereof.   *State* v. *Hinkle,* 37 Ark. 532, was an action brought at law by the State for the use of Izard County to recover from a sheriff illegal fees allowed to him, and for which warrants had been issued but not paid.   This court held that no recovery could be had in that suit, without showing that the warrants had been paid.   The case at bar is, however, altogether different.   This is a suit in equity to surcharge the account of the clerk as well as to recover from him and the sureties on his official bonds the amounts for which warrants have been fraudulently issued to him in excess of the proper amount due.   The primary object of the suit is to correct his accounts, and to ascertain upon

which of his bonds rests the liability for his official misconduct. When this was done, the court of equity, which should not grant relief by piecemeal, went further and properly granted such relief as afforded adequate protection to the county from injury. If the county was not liable for the outstanding illegal warrants, and could not be required to pay them, and should refuse to pay them, then appellants would be liable to the holders of the warrants. Since the county elects to treat the warrants as outstanding liabilities, and to take a decree for the amount thereof, giving appellants the right to satisfy the decree by production and surrender of the warrants, no harm is done to appellants by thus transferring their liability from the holders of the warrants to the county. The court in this way protected the county from the danger of having the warrants pass without notice of illegality into the hands of the collector of taxes or treasurer. It is just such remedy as a court of equity should afford. The warrants in question embraced both legal and fictitious allowances, and, if the warrants had been before the court, as in the case of *Shirk* v. *Pulaski County,* 4 Dillon, 209, the court might have inspected them, and, as was done in that case, cut them down to the proper and legal amounts. But in that case the plaintiff brought the warrants before the court, asserting their validity, whereas in the case at bar the warrants were not before the court. It was not shown who the owners were, nor whether the warants had ever been paid. If the warrants are in the hands of third parties, and the county refuses to pay them, appellants are liable on their bonds to such holders for the fraudulent misconduct of the clerk in issuing them; if they have been paid by the county, appellants are liable; and if the warrants are in the hands of appellants, or either of them, the decree can be satisfied by production and surrender thereof. So in no event are appellants injured by the peculiar remedy allowed by the court. If the warrants have never passed out of the hands of appellant Place, appellants should have shown that fact by way of defense.

We find no error in the decree, and it is in all things affirmed.