STATE *v.* PERKINS.

Opinion delivered January 1, 1912.

1.  COUNTY  COLLECTOR — ACCOUNTING  BY — CONCLUSIVENESS. — The county court has jurisdiction to examine the settlement of a collector's account made by the clerk, and to approve or reject the same, and its judgment approving and confirming the settlement is conclusive as to its correctness.  (Page 363.)

2.  SAME—CORRECTION OF SETTLEMENT.—The county court has jurisdiction, under Kirby's Digest, section 7174, to correct any error discovered in a collector's settlement and to reconsider and adjust same within two years from the date of such settlement; and the chancery court thereafter has jurisdiction to grant relief upon an allegation of fraud. (Page 364.)

3.  SAME—SETTLEMENT OF COLLECTOR—FRAUD.—The fact that a county collector in making his settlement with the county court, charged an excessive commission did not constitute a fraud such as would justify a review of the settlement in equity.   (Page 364.)

Appeal from Marion Chancery Court;  *T. Haden Humphreys,* Chancellor; affirmed.

STATEMENT BY THE COURT.

This suit was brought by the prosecuting attorney in the name of the State for the use of the county and the various school districts therein to set aside a judgment and order of the county court of Marion County of July 15, 1903, confirming the settlement of the defendant as the collector of the county, on account of fraud, and recover a balance claimed to be due from him, it being alleged that certain sums of money were collected, the revenues belonging to the State, county and school districts, and that the collector retained as his commission for services five per cent. on the amount collected, instead of three and a half per cent., amounting to $225.41 more than the amount allowed by law, and that, more than two years having passed since the confirmation of the settlement, the county court was without power to correct it and grant relief.

The defendant answered, admitting that he was the collector, and collected the taxes for 1902, and made the settlement

with the clerk during the year 1903 at the time and in the manner required by law; that the clerk made the settlement at the July term and presented same to the county court, which was duly confirmed and adjudicated, and that he paid the amount found due thereon into the county treasury. "That at the time for said settlement he reported to the clerk all of the revenues collected by him for the county and various school districts thereof, and believed that the clerk had made a correct settlement, and that the judgment approving and confirming same and adjudging the amount due by him to the various funds was correct, and that he, in good faith, made settlement with the county treasurer, paying all that was shown to be due by said settlement and judgment;" denied all the allegations of fraud, and that he procured or caused the clerk to allow a commission of five per cent. on the revenues so collected, and that he knew that he had been allowed any greater commission than the law allowed; stated that the settlement was made in the same manner and with allowances of the same commissions as had been allowed by the clerk and the court at all times in said county; denied any indebtedness to the county or the various school districts as alleged, and pleaded the three years statute of limitations.

The testimony shows that the defendant was the sheriff and collector of Marion County during the year of 1903, and collected the taxes for 1902, and made settlement with the clerk of the county court therefor. The settlement shows the various amounts collected, credited with the commissions allowed certain items amounts, percentage not mentioned, but, in fact, five per cent., and that the settlement was duly approved and confirmed.

The defendant testified that J. M. Phillips, his deputy, assisted in the collection of taxes, and made the settlement with the clerk, as he had had a great deal of experience, and "I left it to him and the clerk to make the proper settlement." That, after it was figured out and before it was approved, he compared it with the settlements of his predecessors, to see that it compared favorably, and had two attorneys to look over it, one of whom is now the prosecuting attorney, and that both said it was correct.

"I was allowed five per cent. commission, and thought I was

entitled to it, as all the collectors before me had made settlement likewise. Had I known that I was not entitled to it, I would not have received it. I was not present in court when the settlement was acted upon by the court, and all I did was to settle according to the figures that had been made. I settled according to the settlement as made by my deputy, Mr. Phillips, with the clerk, which was approved by the court. I never offered any inducement to the clerk to make or to the judge to approve of this settlement. I thought it was correct in every particular."

B. F. Fee testified: "I was county judge of Marion County during the year 1903. I examined and approved the settlement of H. H. Perkins as collector at the July term, 1903, of the Marion County Court for the taxes of 1902. I was not spoken to by any one about the settlement in any way, and no one offered me any inducement to make it. I thought it was correct. I do not think Mr. Perkins was in court when I approved the settlement."

There was introduced in evidence a letter from the Auditor of State of June 7, 1911, replying to an inquiry in regard to said settlement, in which the Auditor said he was not able to find any correspondence relating to the matter, and set out the facts in connection with the settlement as shown by the records of the office.

This letter shows that on July 14, 1903, the settlement as made with the collector and the clerk was received, and, according to it, the collector had been credited with commissions at the rate of five per cent., amounting to certain sums given, and, according to the clerk's certificate of the total revenues collected, he was not entitled to the five per cent. commission, and the Auditor refused to give him credit for commissions at that rate, but did allow him credit of the proper commission of three and a half per cent., giving the amounts of commissions to which he was entitled on the State revenues. The letter closes: "Upon notification from this office that he was given credit for only three and one-half per cent., he remitted enough to pay, and full settlement was made on July 22, 1903."

No other evidence was introduced on the part of the State, and the chancellor, upon a final hearing, dismissed the com-

plaint for want of equity, and from the judgment this appeal comes.

*Hal L. Norwood,* Attorney General, *William H. Rector,* Assistant, and *Gus Seawel,* Prosecuting Attorney, for appellant.

1. This is an action to vacate a judgment of the county court approving the settlement of a collector of public revenues because of a mistake in the amount of commissions allowed. It is not an action arising upon an open account and barred by the three years statute of limitations. Even if the statute should apply to a judgment rendered upon an open account in a suit to vacate and impeach it for fraud, accident or mistake, it would not apply in this case, upon the theory *nullum tempus occurrit regi.* If it is contended that this rule applies only to the State in its sovereign capacity, and not to counties and school districts, it may be answered that the conditions in and under which statutes of limitation apply to counties and school districts do not apply when they are exercising any of the functions of the sovereign power. 84 Ark. 516, 520; 63 Ark. 56; 34 Ia. 84; 26 Ark. 37; 68 Ark. 160; 32 Ark. 45, 51, 52; Kirby's Digest, § 990; art. 2 sec. 23, Const.; 43 Ark. 525; art. 14, Const.; 2 Black (U. S.) 515; 94 Ark. 583, 585 If, in levying and collecting taxes, the State performs the highest functions of government, it must follow that these agencies to which this power is delegated by law are also, in the exercise thereof, performing the highest functions of government. 75 Me. 210, 211.

The action is not barred because a statute provides that an action for recovery of the amount of the debt may be commenced "*at any time* after such failure" of the collector to pay the money in the manner and at the time provided by law. Kirby's Digest, § 7781.

2. The county court's mistake and error consisted in computing the commission at five per cent. on each separate fund, when it should have been computed on the aggregate collection upon the graduated basis fixed by statute. Kirby's Digest, § 7072; 51 Ark. 212. The law fixes the compensation of the collector for collecting taxes, and prohibits the county court from auditing and allowing to any officer any fees not specifically allowed him by law. Kirby's, Digest, § § 7052, 1458; 56 Ark. 581; 57 Ark. 487.

Those who deal with public agents must take notice of the limitations which the law imposes upon their authority to bind their principals. 44 Ark. 437; 42 Ark. 118; 54 Ark. 251; 39 Ark. 580; 25 Ark. 261.

Both the collector and the county court are conclusively presumed to have known the correct and legal percentage allowed the collector as commissions, but through inadvertence and mistake they computed it wrongly, this being purely a mistake of fact. But, whether treated as a mistake of fact or of law, it is clearly, under the facts of this record, such a mistake as would warrant a court of equity in vacating the judgment. The mistake in this case, or misconception of the legal right to the commission under the law, was mutual, and equity will relieve from acts done by parties under a mutual mistake, not of the existence of a law, but of its legal effect. 13 Ark. 130; 15 Ark. 489; 24 Ark. 369; 49 Ark. 33; 69 Ark. 406.

The weight of authority is to the effect that fees or compensation paid illegally or by mistake out of public funds, by ministerial officers or boards to public officers, may be recovered. 50 Ark. 81, 84; 84 Ark. 516, 520; 13 Am. & Eng. Ann. Cases, 351, footnote following decision.

3. The facts presented by the record constitute such a fraud, accident or mistake as will authorize a court of equity to grant the relief prayed. 1 Story, Eq. Jur. § 187; Black's Law Dict. "Fraud," 517; 50 Ark. 217, 224.

*S. W. Woods*, for appellee.

1. More than seven years having elapsed after the settlement was made and approved before this suit was brought, appellant is barred by laches and the statute of limitations.

While it is true that laches is not imputable to the State, and that the statute of limitations does not run against it, yet this is only in cases where the State is the real party in interest. This suit was brought in the name of the State for the use of the county and the school districts, under authority of section 990, Kirby's Digest, but appellant concedes that the State has no real interest. 13 Am. & Eng. Enc. of L. (1 ed.), 712, 713, 714; Wood on Limitations, 117, § 53; 63 Ark. 57; 39 Ark. 263; 66 Ark. 360; 84 Ark. 516; 41 Ark. 45; 58 Ark. 151; 22 Mo. 525; 82 Mo. 587; 66 Pa. St. 222; 33 Ia. 151; 68 Tex. 321; 57 Ark. 142.

The defense of the statute of limitations having been interposed, the burden was on appellant to show by its complaint and testimony that the action was not barred by limitation. Therein it failed.   27 Ark. 343;   53 Ark. 96;   69 Ark. 311;   68 Ark. 449;   25 Cyc. 1216, 1217;   57 Ark. 148.

The statute commenced to run at the time the settlement was approved, and was completed at the end of three years. 66 Ark. 360;   84 Ark. 516;   25 Cyc. 1084;   25 Am. & Eng. Enc. of L. (1 ed.) 353;   64 Ark. 165; 29 Ark. 108;   25 Ark. 462.

Aside from the statute of limitations, the appellant ought not to recover because of the staleness of the claim.   19 Ark. 16;   22 Ark. 1;   57 Ark. 142;   35 Ark. 137.

2.   There being no fraud or imposition on the county court in approving the settlement, and the mistake being purely one of law, the chancery court had no authority to open up or vacate the judgment of the county court.   38 Ark. 150;   53 Ark. 476;   Kirby's Digest § 7136; 43 Ark. 33.   The only remedy for any mistake of law which the county had was by appeal to the circuit court.   23 Cyc. 1004-5;   12 Am. & Eng. Enc. of L. 147;   23 Ark. 641;   20 Ark. 526;   11 Ark. 604;   48 Ark. 535.

3.   The complaint does not state facts sufficient to authorize a chancery court to vacate the judgment of the county court confirming the settlement.   49 Ark. 311;   42 Ark. 186; 47 Ark. 301;   46 Ark. 25.

KIRBY, J., (after stating the facts.)   It is undisputed that the defendant was the collector of Marion County, and collected the revenues for 1902, and made settlement thereof with the county clerk in 1903, which settlement was duly approved and confirmed by the county court in July, 1903; that in said settlement he charged and was allowed and credited with five per cent. commission upon the revenues collected, and was entitled under the law to but three and a half per cent., the difference between which and the five per cent. being the amount sued for herein.

The county court had jurisdiction to examine the settlement made by the clerk with the collector and approve or reject the same, and .its judgment approving and confirming the settlement conclusive of its correctness.   *Jones* v. *State,* 14 Ark. 170;   *Hunnicutt* v. *Kirkpatrick,* 39 Ark. 172;   *State*

v. *Wood,* 51 Ark. 205; *Ireland* v. *State,* 99 Ark. 23; *Crawford* v. *Carson,* 35 Ark. 581.

The county court also had the power to correct any error discovered in such settlement, and to reconsider and adjust the same within two years from the date thereof (section 7174, Kirby's Digest), and the chancery court, after the expiration of said time allowed the county court by law for the correction of errors in such settlements, has jurisdiction to grant relief upon allegation and proof of fraud. *State* v. *Turner,* 49 Ark. 311.

The collector, and his deputy, who had had experience in making such settlements, and the judge of the county court, all knew that the collector was charging five per cent. commission, and being allowed credit therefor at the time the settlement was made and confirmed, and the settlement itself showed that fact, and there was no evidence whatever of any fraud or concealment practiced upon the court to procure the confirmation of the settlement.

The testimony further disclosed that the collectors in that county had theretofore charged and been credited with a commission of five per cent. for the collection of the taxes, and that the officials understood that that was the rate allowed by law.

It is true that the statement from the Auditor's office in 1911 showed that, after the settlement was approved and confirmed, and when the collector was paying the revenues into the State treasury, they discovered that upon the whole amount collected three and one half per cent. was the amount allowed by law, and required him to pay into the treasury the difference between that and the five per cent. credited by the county court upon the State's revenues. This fact was notice to him that he had charged and been allowed by the judgment of the county court one and one-half per cent. more commission on the State revenues than the law entitled him to, and probably that he had charged and been allowed for the collection of the county revenues the same amount more than the law warranted, but, all this occurred after the settlement was made, approved and confirmed, and could not have had effect to charge him with notice at the making of the settlement that he was demanding fees not allowed by law, nor have conduced to. prove any fraud practiced by him in procuring confirmation of said settlement. Fraud is never presumed, but must be proved, and there was

no proof of any fraud or concealment practiced on the county court in securing the confirmation of the collector's settlement; and, even if the charge and allowance of five per cent. commission, instead of three and one-half, the right percentage, can be considered evidence of fraud, certainly it can not be said the chancellor's finding in this case is clearly against the weight of the evidence, and his judgment dismissing the bill for want of equity is affirmed.